## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| HYUNDAI STEEL COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )    Court No. 22-00138 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

## <u>COMPLAINT</u>

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff, Hyundai Steel Company (hereinafter, "Plaintiff" or "Hyundai Steel"), by and through its counsel, alleges and states as follows:

## <u>JURISDICTION</u>

1.    Plaintiff brings this action pursuant to, and in accordance with, sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii)), contesting certain aspects of the final results of the 2019-2020 administrative review of the antidumping duty order on *Certain Oil Country Tubular Goods from the Republic of Korea*, Case No. A-580-870, issued by the U.S. Department of Commerce ("Commerce"), International Trade Administration, as it applies to Plaintiff.  *See Certain Oil Country Tubular Goods from the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020*, 87 Fed. Reg. 20,815 (Dep't Commerce Apr. 8, 2022) ("*Final Results*"), and accompanying unpublished Issues and Decision Memorandum (Dep't Commerce Apr. 1, 2022) ("*IDM*").

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## STANDING

3.      Plaintiff is a foreign producer and exporter of subject merchandise, oil country tubular goods from Korea, and therefore is an interested party within the meaning of 19 U.S.C. § 1677(9)(A).  Plaintiff requested an administrative review and was selected as a mandatory respondent for individual examination by Commerce.  Plaintiff participated in the administrative review proceeding by requesting a review and through the filing of factual information (including original and supplemental questionnaire responses) and legal arguments to address substantive case issues.  Accordingly, Plaintiff has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

4.      The *Final Results*, which is being challenged herein, were published in the *Federal Register* on April 8, 2022.  *See* 87 Fed. Reg. 20,815.  On May 6, 2022, Plaintiff timely filed a Summons initiating this action within thirty days of the publication of the *Final Results*, and Plaintiff is timely filing the Complaint today within thirty days of the filing of the Summons. The filing of the Summons and Complaint thus are timely in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of the U.S. Court of International Trade.

## STANDARD OF REVIEW

5.      This Court reviews actions concerning determinations issued by Commerce brought under 19 U.S.C. § 1516a(a)(2) to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## PROCEDURAL HISTORY

6.      On October 30, 2020, Commerce initiated the 6th administrative review of the antidumping duty order on oil country tubular goods ("OCTG") from the Republic of Korea.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 68,840 (Dep't Commerce Oct. 30, 2020) ("*Initiation Notice*").  Commerce's period of review ("POR") was September 1, 2019, through August 31, 2020.

7.      On December 18, 2020, Commerce issued a memorandum stating that it had selected Hyundai Steel and SeAH Steel Corporation ("SeAH") as mandatory respondents in the 2019-2020 administrative review.

8.      Between February 2021 and September 2021, Hyundai Steel submitted responses to Commerce's original and supplemental questionnaires.

9.      Because Hyundai Steel did not have a "viable" comparison market during the POR, Commerce used its constructed value ("CV") methodology to calculate normal value.  On March 30, 2021, Commerce solicited information to be used for the profit and selling expense components of Hyundai Steel's CV calculation.  On April 14, 2021 and April 23, 2021, Hyundai Steel submitted comprehensive factual information and comments, including complete and translated audited financial statements of steel pipe producers in Korea and from around the world, for Commerce's use in calculating the CV profit and selling expense ratios.  On September 13, 2021, Hyundai Steel submitted additional comments on the appropriate methodologies for determining CV profit and selling expenses and for the constructed export price ("CEP") profit component of the net U.S. price calculations.

10.      On September 29, 2021, Commerce issued its preliminary results of the 2019-2020 administrative review.  *See Certain Oil Country Tubular Goods from the Republic of*

*Korea:  Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2019–2020*, 86 Fed. Reg. 54,928 (Dep't Commerce Oct. 5, 2021) ("*Preliminary Results*"), and accompanying unpublished Decision Memorandum for the Preliminary Results of the 2019-2020 Administrative Review (Dep't Commerce Sept. 29, 2021).  In its *Preliminary Results*, Commerce calculated antidumping duty margins of 19.38 percent *ad valorem* for Hyundai Steel and 3.85 percent *ad valorem* for SeAH.  *Id.* at 54,929.  As part of its *Preliminary Results*, Commerce assigned a preliminary antidumping duty rate of 11.62 percent *ad valorem* to 30 non-examined companies based on the average of the rates calculated for Hyundai Steel and SeAH.

11.     As part of its preliminary antidumping duty calculations, Commerce based CV profit and selling expenses on the business proprietary information of the other mandatory respondent, SeAH, specifically with regard to SeAH's third-country sales of OCTG to Kuwait, under the "any other reasonable method" provision of 19 U.S.C. § 1677b(e)(2)(B)(iii). Commerce used this same source to calculate CEP profit for Hyundai Steel in the net U.S. price calculations.

12.     In November 2021, interested parties, including Plaintiff, submitted case and rebuttal briefs addressing issues in the *Preliminary Results.* Among other things, Plaintiff argued that Commerce should not use SeAH's third-country sales data as the basis for calculating Hyundai Steel's CV profit and selling expenses because:  (a) Hyundai Steel itself has no means to review or analyze the underlying data in order to ascertain the accuracy of such source because it cannot access SeAH's business proprietary information under Commerce's rules; (b) Commerce failed to apply the required CV "profit cap" as required by the statute and court precedent, which was particularly important since SeAH's third-country profit ratio far exceeded

other record sources; (c) a confidential analysis of SeAH's third-country sales data revealed that the source was not representative for purposes of calculating CV profit and selling expenses for Hyundai Steel; and (d) the record contained numerous alternative, contemporaneous, publicly-available sources for calculating CV profit and selling expenses, including certain sources that Commerce had used previously for purposes of calculating CV profit and selling expenses.

13.    Hyundai Steel also opposed Commerce's decision to calculate CEP profit using the same ratio that Commerce used to calculate CV profit because:  (a) this source does not comply with the statutory requirement to reflect the "total profit earned by" Hyundai Steel and its U.S. affiliate, Hyundai Steel USA ("HSU"), with respect to the sale of the same merchandise for which the companies' total expenses were determined; (b) this source suffers from the same deficiencies discussed in the CV profit context; and (c) the record contained at least six different alternative sources that complied with the statute and all demonstrated that the CEP profit ratio that Commerce preliminarily used was overstated and distortive.

14.    On April 8, 2022, Commerce published its *Final Results* in which it calculated antidumping duty margins of 19.54 percent *ad valorem* for Hyundai Steel and 3.85 percent *ad valorem* for SeAH.  *See Final Results*, 85 Fed. Reg. at 20,816.  Commerce also assigned a final antidumping duty rate of 11.70 percent *ad valorem* to the non-examined companies based on the average of the final rates calculated for the two mandatory respondents.  *Id.*  The legal bases for Commerce's *Final Results* were set forth in an unpublished Issues and Decision Memorandum dated April 1, 2022.

## ISSUES PRESENTED BY THE ACTION AND PLAINTIFF'S STATEMENT OF CLAIMS

15.    In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's *Final Results* in its 2019-2020 antidumping duty

administrative review were unsupported by substantial record evidence and/or were otherwise not in accordance with law.

## COUNT ONE

16.    Paragraphs 1 through 15 are incorporated herein by reference.

17.    Commerce's determination to calculate Hyundai Steel's CV profit and selling expenses using the business proprietary information of the other mandatory respondent, SeAH, related to that respondent's third-country sales to Kuwait, is not supported by substantial evidence and is otherwise not in accordance with law given that Hyundai Steel had no ability to review the underlying information used for this critical component of the antidumping duty calculations; the information itself suffered from critical flaws that rendered the source unreasonable and unsuitable for use in calculating Hyundai Steel's weighted-average dumping margin; and more representative, reasonable, and non-distortive sources existed on the record. Commerce's use of SeAH's proprietary third-country sales data erroneously and unlawfully overstated the CV profit and selling expenses and, in turn, Hyundai Steel's overall weighted-average dumping margin.

## COUNT TWO

18.    Paragraphs 1 through 15 are incorporated herein by reference.

19.    Commerce's failure to calculate, or attempt to calculate, a CV profit rate cap as expressly required by statute, is not supported by substantial evidence and is otherwise not in accordance with law.

## COUNT THREE

20.    Paragraphs 1 through 15 are incorporated herein by reference.

21.    Commerce's decision to use the profits earned on SeAH's third-country sales to Kuwait as the basis for calculating CEP profit for Hyundai Steel, which was the same flawed source that Commerce used for CV profit (*see* Count I, *supra*), is not supported by substantial evidence and is otherwise not in accordance with law.   In particular, Commerce's choice of source for CEP profit fails to comply with the statutory directive under 19 U.S.C. § 1677a(f)(2)(D) that CEP profit must reflect "the total profit earned by" Hyundai Steel (the foreign producer and exporter) and HSU (a U.S. affiliated party) "with respect to the sale of the same merchandise for which total expenses are determined."  Commerce's choice of CEP profit was further unreasonable in view of the critical flaws that exist with SeAH's business proprietary third-country sales data and the existence of at least six alternative sources on the record that complied with the statutory requirement and purpose for calculating CEP profit.

## COUNT FOUR

22.    Paragraphs 1 through 15 are incorporated herein by reference.

23.    Commerce's determination to increase the numerator and decrease the denominator of the general and administrative ("G&A") expense ratio of Hyundai Steel's U.S. affiliate, HSU, to account for the cost of goods sold of rejected pipes that HSU sold to an unaffiliated U.S. customer—despite the fact that (A) these rejected pipes were a type of non-subject product that HSU produced from imported OCTG and sold during the POR, and thus relate to HSU's production operations, and (B) Hyundai Steel calculated HSU's G&A expense ratio consistent with HSU's normal accounting treatment of the costs in question—is not supported by substantial evidence.

## COUNT FIVE

24.    Paragraphs 1 through 15 are incorporated herein by reference.

**Complaint**

25.     Commerce's determination to apply neutral facts available to the calculation of HSU's yield loss on further manufacturing operations, despite substantial record evidence that Hyundai Steel fully explained and demonstrated that it reported the per-unit further manufacturing costs based on the actual further manufacturing fees that HSU incurred divided by the same theoretical weight used in all other aspects of the antidumping duty calculations, is not supported by substantial evidence and is otherwise not in accordance with law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

26.     For the reasons stated above, Plaintiff respectfully requests that the Court:

(a)     enter judgment in Plaintiff's favor;

(b)     declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(c)     remand these matters to Commerce for redetermination consistent with the Court's opinion, including a recalculation of Plaintiff's antidumping duty margin; and

(d)     provide such other relief as the Court deems just and proper.


                                        Respectfully submitted,

                                        /s/ Jarrod M. Goldfeder
                                        Robert G. Gosselink
                                        Jarrod M. Goldfeder

                                        TRADE PACIFIC PLLC
                                        700 Pennsylvania Avenue, SE, Suite 500
                                        Washington, DC  20003
                                        Tel:  (202) 223-3760
                                        Fax:  (202) 223-3763
                                        Email:  jgoldfeder@tradepacificlaw.com

Dated:  May 10, 2022                    *Counsel to Plaintiff*

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Hyundai Steel Company v. United States, Court No. 22-00138**

**Public Certificate of Service**

I hereby certify that on this 10th day of May, 2022, copies of the foregoing Complaint were served by certified mail, return receipt requested, on the following parties:

*On behalf of the U.S. Dep't of Commerce:*
Supervising Attorney
Civil Division – Commercial Litigation Branch
U.S. DEPARTMENT OF JUSTICE
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

Attorney-in-Charge
UNITED STATES DEPARTMENT OF JUSTICE
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, NY 10278

Office of the Chief Counsel
for Enforcement & Compliance
U.S. DEPARTMENT OF COMMERCE
14th Street & Constitution Avenue, N.W.
Washington, DC 20230

*On behalf of SeAH Steel Corporation:*
Jeffrey M. Winton, Esq.
WINTON & CHAPMAN PLLC
1900 L Street, NW Suite 611
Washington, DC 20036

*On behalf of Maverick Tube Corporation, Tenaris Bay City, Inc., and IPSCO Tubulars Inc.:*
Gregory J. Spak, Esq.
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005

*On behalf of Vallourec Star, L.P. and Welded Tube USA:*
Roger B. Schagrin, Esq.
SCHAGRIN ASSOCIATES
900 7th Street, NW, Suite 500
Washington, DC 20001

*On behalf of United States Steel Corp.:*
Thomas M. Beline, Esq.
CASSIDY LEVY KENT (USA) LLP
900 19th Street, NW, Suite 400
Washington, DC 20006

*On behalf of Husteel Co., Ltd.:*
Donald B. Cameron, Esq.
MORRIS, MANNING & MARTIN, LLP
1401 I Street, NW, Suite 600
Washington, DC 20005

J. David Park, Esq.
*Representative of NEXTEEL Co., Ltd.*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001

/s/ Jarrod M. Goldfeder
Jarrod M. Goldfeder