## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HYUNDAI STEEL COMPANY,** | |
| **Plaintiff,** | |
| **AJU BESTEEL CO., LTD., NEXTEEL CO., LTD., and HUSTEEL CO., LTD.,** | |
| **Consolidated Plaintiffs,** | |
| **and** | |
| **HUSTEEL CO., LTD., NEXTEEL CO., LTD., and SEAH STEEL CORPORATION,** | **Before:  Hon. Jennifer Choe-Groves, Judge** |
| **Plaintiff-Intervenors,** | **Consol. Court No. 22-00138** |
| **v.** | |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **VALLOUREC STAR, L.P., WELDED TUBE USA INC., and UNITED STATES STEEL CORPORATION,** | |
| **Defendant-Intervenors.** | |

## COMMENTS OF PLAINTIFF, HYUNDAI STEEL COMPANY, IN PARTIAL OPPOSITION TO COMMERCE'S REMAND REDETERMINATION

**Submitted by:**

> **Robert G. Gosselink**
> **Jarrod M. Goldfeder**
> **TRADE PACIFIC PLLC**
> **700 Pennsylvania Avenue, SE**
> **Suite 500**
> **Washington, D.C.  20003**
> **Tel.:  (202) 223-3760**

**Dated:  September 12, 2023**       ***Counsel to Hyundai Steel Company***
                                      ***Plaintiff***

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I.      INTRODUCTION ................................................................................................. 1

II.     COMMERCE'S REDETERMINATION CONCERNING CV PROFIT AND SELLING
        EXPENSES REMAINS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND
        OTHERWISE NOT IN ACCORDANCE WITH LAW ...................................................... 2

        A.      Commerce's Remand Redetermination Continues to Reflect a Misreading of the
                Statute Concerning CV Profit and Selling Expenses ............................................. 2

        B.      Commerce's Continued Reliance on SeAH Steel's Third-Country Sales Data to
                Calculate CV Profit and Selling Expenses for Hyundai Steel Remains
                Unreasonable and Unsupported by Substantial Evidence ..................................... 6

        C.       CV Profit Determinations Must Be Made on a Case-by-Case Basis .................. 11

III.    COMMERCE'S CV PROFIT CAP REASONING STILL IS NOT IN ACCORDANCE
        WITH LAW ................................................................................................................. 13

IV.     CONCLUSION.......................................................................................................... 18

## **TABLE OF AUTHORITIES**

### *Court Precedent*

Atar S.r.l. v. United States, 730 F.3d 1320 (Fed. Cir. 2013) ..........................................13

Atar S.r.l. v. United States, 34 CIT 465, 703 F.Supp.2d 1359 (2010)...........................14

Bowman Transp. v. Ark.-Best Freight Sys., 419 U.S. 281 (1974) ...................................7

Geum Poong Corp. v. United States, 25 CIT 1089, 163 F.Supp.2d 669 (2001)...........................14

Husteel Co. v. United States, 180 F.Supp.3d 1330 (Ct. Int'l Trade 2016) ...............................5, 15

Husteel v. United States, 98 F.Supp.3d 1315 (Ct. Int'l Trade 2015).......................................14, 17

Hyundai Steel Co., et al., v. United States, 639 F.Supp.3d 1325 (Ct. Int'l Trade 2023)..............1, 2

Mexichem Fluor Inc. v. United States, 179 F.Supp.3d 1238 (Ct. Int'l Trade 2016) ....................12

NEXTEEL Co. v. United States, 28 F.4th 1226 (Fed. Cir. 2022) ..................................11

Nucor Corp. v. United States, 414 F.3d 1331 (Fed. Cir. 2005) .....................................12


### *Statutes*

19 U.S.C. § 1677(16) ..............................................................................................5

19 U.S.C. § 1677b(e)(2)(A) .................................................................................3, 5

19 U.S.C. § 1677b(e)(2)(B) ..................................................................... 4-6, 10, 17

19 U.S.C. § 1677b(e)(2)(B)(i)....................................................................................3

19 U.S.C. § 1677b(e)(2)(B)(ii) .................................................................................4

19 U.S.C. § 1677b(e)(2)(B)(iii) ................................................................4, 7, 11, 13


### *Administrative Determinations*

Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296 (Dep't Commerce
May 19, 1997)..............................................................................................13

Certain Oil Country Tubular Goods from the Republic of Korea, 87 Fed. Reg. 20,815
(Dep't Commerce Apr. 8, 2022) (final results 2019-2020 admin. rev.), and accompanying
unpublished Issues and Decision Memorandum (Dep't Commerce Apr. 1, 2022)........................1

### *Other Authorities*

Statement of Administrative Action Accompanying the Uruguay Round Agreements
Act, H.R. Rep. No. 103-316 (1994), Vol. 1 .................................................................................12

## I.    <u>INTRODUCTION</u>

Plaintiff, Hyundai Steel Company ("Hyundai Steel"), a producer and exporter of oil country tubular goods ("OCTG") from the Republic of Korea, hereby submits these comments in partial opposition to the August 15, 2023, remand redetermination of the U.S. Department of Commerce submitted in this action.  <u>See</u> "Final Results of Redetermination Pursuant to Court Remand" (Aug. 15, 2023), ECF No. 78 ("<u>Final Remand Results</u>"), filed in response to the June 9, 2023, opinion and remand order of this Court in <u>Hyundai Steel Co., et al., v. United States,</u> 639 F.Supp.3d 1325 (Ct. Int'l Trade 2023) ("<u>Hyundai Steel</u>").[1]  These partial opposition comments are timely submitted in accordance with the deadline set forth in the Court's remand order.  <u>See Hyundai Steel</u>, 639 F.Supp.3d at 1339.

For the reasons described below, Commerce's redetermination with respect to constructed value ("CV") profit and selling expenses remains unsupported by substantial record evidence and not in accordance with law.  Hyundai Steel respectfully requests that the Court issue a second remand order with respect to this aspect of Commerce's redetermination.[2]

---

[1] This action is an appeal from Commerce's final results of the 2019-2020 administrative review of the antidumping duty order on <u>Certain Oil Country Tubular Goods from the Republic of Korea</u>, 87 Fed. Reg. 20,815 (Dep't Commerce Apr. 8, 2022) (final results 2019-2020 admin. rev.) ("<u>Final Results</u>"), P.R.317, as they apply to Hyundai Steel.  The challenged determinations, findings, and conclusions were set out primarily in Commerce's unpublished Issues and Decision Memorandum (Dep't Commerce Apr. 1, 2022) ("IDM"), P.R.305.

Citations to confidential documents from Commerce's June 21, 2022, Administrative Record List, ECF No. 41, are designated as "C.R.__," and citations to public documents are designated as "P.R.__."  All record documents cited herein have been included in the Joint Appendix submitted on to this Court on January 26, 2023, ECF Nos. 67-68.

[2] On a second remanded issue, Commerce reconsidered and changed the methodology by which it calculated constructed export price ("CEP") profit for Hyundai Steel.  <u>See Final Remand Results</u> at 2, 7-10.  Hyundai Steel agrees with this aspect of the <u>Final Remand Results</u>.

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

II.   **COMMERCE'S REDETERMINATION CONCERNING CV PROFIT AND
      SELLING EXPENSES REMAINS UNSUPPORTED BY SUBSTANTIAL
      EVIDENCE AND OTHERWISE NOT IN ACCORDANCE WITH LAW**

Hyundai Steel assumes familiarity with the procedural and substantive issues that

preceded the Court's June 9, 2023, slip opinion in Hyundai Steel.  Specifically, this Court

ordered Commerce to "reconsider the issues and reexamine the administrative record" with

respect to the agency's determination to calculate Hyundai Steel's CV profit and selling

expenses using the third-country sales data (to Kuwait) of the other mandatory respondent, SeAH

Steel.  See Hyundai Steel, 639 F.Supp.3d at 1334.  Rather than "reexamine the administrative

record," however, Commerce recapitulates the same bases upon which it decided to use SeAH

Steel's third-country sales data in its original determination.  See Final Remand Results at 10-16.

For the reasons described below, a second remand is warranted for this issue.

A.   **Commerce's Remand Redetermination Continues to Reflect a Misreading of
     the Statute Concerning CV Profit and Selling Expenses**

Commerce continues to justify its choice on the basis that the statute "show{s} a

preference that the profit and selling expenses reflect:  (1) production and sales in the foreign

country; and (2) the foreign like product, i.e., the merchandise under consideration."  Id. at 13.

Commerce continued that "SeAH's combined selling expense and profit experience reflects the

profit of a Korean OCTG producer, on comparison market sales of the merchandise under

consideration, . . . from OCTG produced by a Korean producer in Korea.  This alternative

closely simulates the statutory preference for calculating CV profit and selling expenses."  Id. at

14.  Commerce's Final Remand Results are replete with references to a "statutory preference."

Id. at 8, 12-14, 23, 24, 30.  Commerce's explanation, which largely mirrors the agency's original

Final Results, should be reconsidered because it reflects a misreading of the statute with respect

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

to the circumstances in which the statute indicates that CV profit should reflect the production

and sale in the foreign country of the "foreign like product."

Commerce bases its characterization of a "statutory preference" on 19 U.S.C. §

1677b(e)(2)(A), which states that CV profit and selling expenses should be based on:

> the <u>actual amounts incurred and realized by the specific exporter or producer being examined in the investigation or review</u> for selling, general, and administrative expenses, and for profits, in connection with the production and sale of a foreign like product, in the ordinary course of trade, for consumption in the foreign country . . .

(Emphasis added.)  Thus, the statutory preference regarding CV profit and selling expenses is for

the **<u>actual data</u>** of the **<u>specific exporter or producer being examined</u>**—in other words, the

actual data of Hyundai Steel related to its foreign market sales.  There is no dispute that such

data did not exist in the underlying review.

In the absence of the preferred actual data of the specific respondent being examined, the

statute permits Commerce to select CV profit from among three different alternatives, none of

which has hierarchical preference.  Alternative 1 allows Commerce to select a source based on:

> the <u>actual amounts incurred and realized by the specific exporter or producer being examined</u> in the investigation or review for selling, general, and administrative expenses, and for profits, <u>in connection with the production and sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise</u> . . . .

19 U.S.C. § 1677b(e)(2)(B)(i) (emphasis added).  This alternative again focuses on the **<u>actual</u>**

**<u>data</u>** for the **<u>specific exporter or producer being examined</u>**—here, Hyundai Steel—but related

to that company's production and sales in the foreign country—here, Korea—of merchandise

that is in the "same **general category of products** as the subject merchandise," a phrase that is

far broader than the phrase "foreign like product."  There is no dispute that the record did not

contain any data to calculate CV profit under Alternative 1.  <u>See</u> Final Remand Results at 12-13.

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

Alternative 2 permits Commerce to base CV profit and selling expenses on:

the weighted average of the actual amounts incurred and realized by exporters or
producers that are subject to the investigation or review (other than the exporter or
producer described in clause (i)) for selling, general, and administrative expenses,
and for profits, in connection with the production and sale of a foreign like product,
in the ordinary course of trade, for consumption in the foreign country . . . .

19 U.S.C. § 1677b(e)(2)(B)(ii) (emphasis added). This alternative focuses on the **actual

amounts** incurred and realized by multiple **other exporters or producers** being examined in

connection with the production and sale of a foreign like product for consumption in the foreign

country. Because the other respondent, SeAH Steel, did not sell OCTG in the foreign market –

which here is Korea – Commerce determined that it could not rely on Alternative 2. This aspect

of Commerce's decision also is not in dispute. See Final Remand Results at 13 ("Commerce

cannot rely on alternative (ii) because the other respondent for which we have data, SeAH, did

not make sales of OCTG in the home market (*i.e.*, Korea).")

Finally, Alternative 3 allows Commerce to calculate CV profit and selling expenses on:

the amounts incurred and realized. . . . based on any other reasonable method,
except that the amount allowed for profit may not exceed the amount normally
realized by exporters or producers (other than the exporter or producer described
in clause (i)) in connection with the sale, for consumption in the foreign country,
of merchandise that is in the same general category of products as the subject
merchandise.

19 U.S.C. § 1677b(e)(2)(B)(iii) (emphasis added).

This third alternative, upon which Commerce relied does not even use the term "foreign

like product" and instead makes reference to "merchandise that is in **the same general category

of products** as the subject merchandise."

As the foregoing establishes, nothing in 19 U.S.C. § 1677b(e)(2)(B) evinces a statutory

preference that the CV profit and selling expenses must approximate production and sales in

Korea of the foreign like product, or even the merchandise under consideration ("MUC"). Two

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

of the three alternatives refer to the "same general category of products," thus evincing that

Congress did not intend for the alternatives to be interpreted so narrowly.  Commerce concedes

that, "Both the preferred method in section 773(e)(2)(A) and alternative method (ii) in section

773(e)(2)(B) expressly reference 'foreign like product,'"  Final Remand Results at 24, reflecting

its recognition that Alternatives 1 and 3 contain no such limitation.  Commerce must apply the

law in accordance with the plain language that embodies unambiguous Congressional intent.[3]

Commerce attempts to imbue a statutory preference, stating that "{t}he statutory reference

in some of the alternative methods to 'merchandise that is in the same general category of

products as subject merchandise,' does not establish the absence of the statutory preference that

the profit should approximate the profit realized in connection with the 'foreign like product.'"

Final Remand Results at 24.  But "foreign like product" is referenced only in subsection (ii) of

19 U.S.C. § 1677b(e)(2)(B) and is not in either subsection (i) or (iii).  Commerce may wish that 19

U.S.C. § 1677b(e)(2)(B) "has a preference for profit sources in the CV profit calculation

reasonably approximating the profit connected to the production and sale of the merchandise

under consideration (as opposed to dissimilar products) in a foreign country . . .," id., but this is

even greater reason for the Court to confirm that Congress has indicated that it does not.[4]

---

[3] Commerce quotes Husteel Co. v. United States, 180 F.Supp.3d 1330, 1346 (Ct. Int'l Trade 2016) for the proposition that "the statute indicates a preference in calculating CV profit for data sources reflecting production and sales in the foreign country of the foreign like product."  Final Remand Results at 23.  Upon review, it appears the Court was addressing the preference that does exist under 19 U.S.C. § 1677b(e)(2)(A), and not 19 U.S.C. § 1677b(e)(2)(B).

[4] Commerce cites 19 U.S.C. § 1677(16) as somehow supporting its position that a statutory preference exists to calculate CV profit and selling expenses based on sales of the foreign like product.  See Final Remand Results at 24.  However, nothing in 19 U.S.C. § 1677(16) says anything about the calculation of CV profit and selling expenses under 19 U.S.C. § 1677b(e)(2)(B), so it is unclear what point Commerce is trying to make.

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

Because 19 U.S.C. § 1677b(e)(2)(B) contains no language setting forth a preference that

the profit and selling expenses must reflect the foreign like product, i.e., the MUC, over other

merchandise within the same general category of merchandise as subject merchandise, Commerce

unreasonably assigned a legal preference for SeAH Steel's third country sales of foreign like

product as the basis for CV profit instead of the alternate financial data of products within the same

general category as OCTG given that no such legal preference exists in the AD statute.

Commerce's Final Remand Results on the CV profit issue should be remanded for reconsideration

to ensure that Commerce's determination is reasonable and in accordance with law.

**B.      Commerce's Continued Reliance on SeAH Steel's Third-Country Sales Data
to Calculate CV Profit and Selling Expenses for Hyundai Steel Remains
Unreasonable and Unsupported by Substantial Evidence**

Apart from the threshold legal issues just discussed, Commerce's specific choice of source

for CV profit and selling expenses remains unreasonable and should be remanded for

reconsideration.  The core of Alternative 3 is that the method used must be "reasonable."  In its

administrative case brief to the agency, counsel endeavored to provide a detailed analysis

demonstrating all the different ways in which SeAH Steel's third-country sales data was

unreasonable, and thus unusable, for purposes of calculating CV profit and selling expenses for

Hyundai Steel.  See Hyundai Steel's Case Brief (Nov. 9, 2021), at 20-24, C.R.313, P.R.281.

Counsel prepared the analysis without assistance or involvement from Hyundai Steel because

Hyundai Steel was not permitted to view the confidential data of SeAH Steel upon which

Commerce based this vital aspect of the AD duty calculations.  The analyses prepared compared

Hyundai Steel's U.S. sales data and SeAH Steel's third-country sales data with respect to the

average variable costs of manufacture ("VCOM"); relative number of sales records, CONNUMs,

and customers; the similarity of the CONNUMs sold in each market according to differences in

6

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

physical characteristics; etc.  Id.  Hyundai Steel incorporates by reference the specific

confidential analysis from its November 9, 2021, case brief to the agency, as well as Hyundai

Steel's Rule 56.2 Memorandum (Sept. 19, 2022) at 12-17, ECF No. 55, filed with this Court.

Taken together, the analysis demonstrated that SeAH Steel's third-country sales served as

an unrepresentative and unsuitable basis for calculating CV profit and selling expenses for

Hyundai Steel.  Commerce never addressed these arguments in the original Final Results and

still has not addressed them adequately in its Final Remand Results.  Notably, Defendant and

Defendant-Intervenors each argued in their response briefs to this Court, which were filed

separately on the same day, that the Court should affirm the original Final Results, even though

the decision was of "less than ideal clarity," because "the agency's path may be reasonably

discerned," citing Bowman Transp. v. Ark.-Best Freight Sys., 419 U.S. 281, 285-86 (1974).  See

Defendant's Response Brief (Dec. 8, 2022), at 14, ECF No. 60; Defendant-Intervenors'

Response Brief (Dec. 8, 2022), at 16, ECF No. 61.  The phrase "less than ideal clarity" more

plainly and succinctly equates to "unclear" or "ambiguous," an apt description for Commerce's

determination with respect to this issue.

Commerce appears to posit that its path is reasonably discernible because SeAH Steel

produced OCTG in Korea, and that none of the differences matter.  In this regard, Defendant-

Intervenors articulated a well-reasoned answer to this point in their response to the Court:

> That is not to say, however, that Commerce's analysis is as simple as
> picking whatever data reflect the highest proportion of OCTG sales. Nor does
> Commerce's Final IDM reflect such a rote approach.  Particularly when, as here,
> employing the "any other reasonable method" alternative of 19 U.S.C. §
> 1677b(e)(2)(B)(iii), Commerce should assess the various alternatives advocated
> by the parties in a holistic manner.  A dataset with a lower OCTG sales proportion
> might have other virtues that make it preferable; similarly, the highest-proportion
> dataset might exhibit significant flaws that are absent in other alternatives.

Defendant-Intervenors' Response Brief (Dec. 8, 2022), at 13-14, ECF No. 61.

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

This is precisely why this Court should remand Commerce's Final Remand Results again for reconsideration regarding the agency's choice of source for CV profit and selling expenses. Commerce selected a dataset simply because it contained OCTG but without recognizing the significant flaws and unrepresentativeness of using that source as a basis for calculating Hyundai Steel's AD duty margin because SeAH Steel's Kuwaiti sales do not reasonably reflect the profitability of Hyundai Steel's OCTG sales. And in doing so, Commerce failed to give due consideration to the virtues in the other record data sources that made them preferable, including, among others, the financial statements of TMK, a surrogate producer whose financial data Commerce had used in the fourth administrative review for CV profit purposes. Commerce's path cannot be "reasonably discerned" where the record contains substantial contradictory evidence establishing the unrepresentativeness and unreasonableness of using SeAH Steel's third-country sales data to calculate CV profit and selling expenses for Hyundai Steel.

Even in these most recent Final Remand Results, Commerce cannot support the reasonableness of its determination that SeAH Steel's third-country sales was better than, or preferable to, the CV profit derived from the alternate data sources in recreating Hyundai Steel's profitability experience when (1) the products that SeAH Steel sold to Kuwait were so different from the OCTG that Hyundai Steel sold to the United States that such sales would never be eligible for comparison to Hyundai Steel's OCTG sales under Commerce's normal dumping calculation methodology; and (2) such incomparability existed even though the sales were of MUC made by a Korean producer. To this point, Commerce states feebly that it was "unnecessary to dissect the differences among various models of OCTG." Final Remand Results at 31. This is a poor excuse when it is exactly those differences that render illegitimate

**Plaintiff's Partial Opposition Comments**
**Consol. Court No. 22-00138**

Commerce's claim that the profit on the sale of those models <u>more reasonably reflected</u> the

profitability of Hyundai Steel's OCTG sales than any of the alternate available record sources.

Indeed, this is not a case in which Commerce was forced to choose among equally

imperfect alternatives.  On the one hand, Commerce had the option to select a CV profit value

based on the third-country sales of products for which Commerce had specific knowledge were

not comparable to the OCTG that Hyundai Steel sold to the United States in several different

respects and suffered from other flaws.  On the other hand, Commerce could have selected a CV

profit value based on contemporaneous, publicly available financial statements reflecting sales of

merchandise within the same general category of products as the subject merchandise, which the

statute specifically permits.[5]  Moreover, the surrogate financial statements contained hundreds of

pages of explanatory support notes from which Commerce and interested parties were able to

evaluate for any potential concerns in the calculations of the profit and selling expense ratios.[6]

These were not equally imperfect options.  Selecting a profit source simply because it

represented the production of OCTG by a Korean producer is reasonable only if the basis for the

profit rate itself is reasonable, which it was not for the reasons discussed.

---

[5] As discussed <u>infra</u>, Commerce could have used the average profit and selling expense ratio of 3.97%, based on an average of four surrogate producers who were producers of merchandise within the same general category of products as the subject merchandise.

[6] On this point, Commerce states that, "The explanatory notes and other information are helpful as a general matter, but here, they indicate that the profit from the financial statements is less suitable than the alternative we selected."  Final Remand Results at 32.  Commerce continues that "the profit from these financial statements reflects production outside Korea, at times from a non-contemporaneous period, and is largely derived from a variety of dissimilar products that are not in the same general category with subject OCTG . . . ."  <u>Id.</u>  Yet, the record established that SeAH Steel's third-country sales data reflected <u>sales</u> outside Korea, and the analysis that Hyundai Steel presented to Commerce confirmed that SeAH Steel's profit data also at times reflected data from a non-contemporaneous period and of dissimilar products. Commerce cannot reconcile the inconsistencies inherent in its own redetermination.

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

Commerce posits that it examined the alternative sources of CV profit on the record and found that none of them is superior to the source that it selected because they were less specific to OCTG and did not represent the profit of a Korean producer and production experience in Korea.  See, e.g., Final Remand Results at 32.  However, as discussed separately, there is no statutory preference to base profit under 19 U.S.C. § 1677b(e)(2)(B) on the profit of a Korean producer with production experience in Korea.  Rather, the statute permits Commerce to calculate CV profit and selling expenses using sources reflecting the "same general category of products as the subject merchandise"—which, undisputedly, is broader than the terms "foreign like product" or "subject merchandise" and thus expectedly would include various types of non-subject merchandise.  As such, Commerce's repeated dismissal of other record sources because they contain non-OCTG products, or seamless rather than welded OCTG products, is misplaced.  See, e.g., Final Remand Results at 15, 25, 29-32.

Moreover, selecting a profit source that has the greatest specificity of the production under consideration (i.e., OCTG) and represents the production of OCTG by a Korean producer is reasonable only if the basis for the profit rate itself is reasonable.  For the reasons discussed in Hyundai Steel's Rule 56.2 Memorandum, profitability and selling expense rates derived from SeAH Steel's third-country sales were flawed and unreasonable.  Therefore, it is irrelevant that such rates were derived from a Korean producer based on production in Korea, especially considering that a major component of its CV profit ratio pertains to sales made outside of Korea reflecting demand and supply factors in an entirely different region (i.e., the Middle East).

Given the critical defects in using SeAH Steel's third-country sales data as the basis for CV profit and selling expenses described above, it is not surprising that Commerce makes no real effort to address the actual substantive problems inherent in Commerce's CV profit and selling

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

expense selection even in these Final Remand Results.  Commerce's continued refusal to address

directly the significant shortcomings with SeAH Steel's third-country sales data as the basis for

calculating Hyundai Steel's CV profit and selling expenses speaks volumes as to the "reasonably

discernible path" of its decision.

In sum, because there is no statutory hierarchy for selecting among the alternatives for

calculating CV profit and selling expenses, Commerce erred in concluding that the specific

language of the alternative methodology of 19 U.S.C. § 1677b(e)(2)(B)(iii) contains a preference

that the profit and selling expenses reflect the foreign like product, i.e., the MUC, over other

merchandise within the same general category of merchandise as subject merchandise.  As such,

Commerce assigned a legal preference to using SeAH Steel's third country sales of foreign like

product as the basis for CV profit instead of the alternate financial data of products within the same

general category as OCTG where there was no such legal preference.  That is, after determining

incorrectly that it was faced with a situation involving equally imperfect CV profit selection

options (discussed supra), Commerce compounded its error by unreasonably applying the non-

existent statutory preference as its basis for choosing an unrepresentative source, afflicted by

obvious flaws, for purposes of calculating CV profit and selling expenses for Hyundai Steel.  For

all these reasons, Commerce's selection of SeAH Steel's third-country sales data for CV profit

and selling expenses should be remanded for reconsideration.

C.      CV Profit Determinations Must Be Made on a Case-by-Case Basis

With respect to its choice of source for CV profit and selling expenses, Commerce claims

that "{t}he U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has sustained a

substantially identical approach" in NEXTEEL Co. v. United States, 28 F.4th 1226, 1240-41

(Fed. Cir. 2022), which concerned SeAH Steel's third-country sales to Canada in a review that

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

predated the current action by several years.  See Final Remand Results at 18; see also id. at 19, 40 n.154.  The Court must reject Commerce's reliance on other cases involving CV profit determinations because they have no bearing on the factual record applicable to the current appeal involving SeAH Steel's demonstrably unrepresentative sales to Kuwait.

Congress has given clear instructions that, with respect to the calculation of CV profit and selling expenses, "no one approach is necessarily appropriate for use in all cases" and "the selection of an alternative {for calculating CV profit/selling expenses} will be made on a case-by-case basis, and will depend, to an extent, on available data."  Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994) ("SAA"), at 840.  Judicial approval or rejection of Commerce's use of a particular methodology in another proceeding thus is not relevant to whether Commerce's action in the current segment of this proceeding was reasonable or supported by substantial evidence.  See Mexichem Fluor Inc. v. United States, 179 F.Supp.3d 1238 (Ct. Int'l Trade 2016) (the facts underlying how information is used in one investigation do not automatically transfer to another investigation).  Congress's admonition against adopting the same approach in different proceedings applies equally to different segments of the same proceeding.

Even assuming that the facts and methodology for calculating and assigning CV profit and selling expenses from SeAH Steel's third-country sales in the previous OCTG administrative review were factually identical to the case here—and they are not—as a matter of law, each agency determination is sui generis, involving a unique combination and interaction of many variables.  Any prior administrative determination therefore is not legally binding on other reviews before this Court or on the positions argued by interested parties.  See Nucor Corp. v. United States, 414 F.3d 1331, 1340 (Fed. Cir. 2005).  Commerce's adoption of a methodology in

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

another segment of the proceeding does not mean that similar action subsequently taken in a later segment is *a priori* reasonable or that interested parties must accept a formulaic repetition of past practice, especially when the facts are different and/or when new information comes to light as was the case here with respect to the reliability and representativeness of SeAH Steel's third-country sales to Kuwait as a basis for assigning CV profit and selling expenses to Hyundai Steel.

## III.   COMMERCE'S CV PROFIT CAP REASONING STILL IS NOT IN ACCORDANCE WITH LAW

The statutory provision under which Commerce based CV profit explicitly provides that, when using a "reasonable method" for CV profit, "the amount allowed for profit may not exceed the amount normally realized by exporters or producers (other than the exporter or producer described in clause (i)) in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise{.}"  19 U.S.C. § 1677b(e)(2)(B)(iii).  This "profit cap" is intended "to prevent the various possible calculation methods from yielding anomalous results that stray beyond the 'amount normally realized' from sales of merchandise in the same general category" in the home market.  Atar S.r.l. v. United States, 730 F.3d 1320, 1327 (Fed. Cir. 2013).  The cap, therefore, helps ensure that the profit rate does not yield "irrational or unrepresentative results."  Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,360 (Dep't Commerce May 19, 1997) (final rule) (emphasis added).

However, Commerce in its Final Remand Results perpetuates the same reasoning as in the original Final Results of a "non-cap" profit cap.  Specifically, Commerce, "{a}s neutral facts available, . . . used SeAH's profit from sales in a third country market; we determined that this is the best source available for calculation of the profit cap because they are specific to OCTG and

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

reflect the production experience of a Korean OCTG producer."  Final Remand Results at 17-18;

see also id. at 34-40.  Thus, on the basis of facts available, Commerce did not apply a profit cap,

or rather, it used the source it selected as the profit cap.  This was tantamount to applying no cap

at all, a practice that the Court has admonished.

For example, this Court explained that "{i}f Alternative Three without the profit cap may

be used as 'facts available,' it would seem a 'facts available' profit cap may also be used."

Geum Poong Corp. v. United States, 25 CIT 1089, 1097, 163 F.Supp.2d 669, 679 (2001).  The

Court continued that, "{b}ecause the statute mandates the application of a profit cap, Commerce

cannot sidestep the requirement without giving adequate explanation even in a facts available

scenario."  Id., accord Atar S.r.l. v. United States, 34 CIT 465, 470, 703 F.Supp.2d 1359, 1364

(2010) ("But even the exception for absence of record data does not allow Commerce to ignore

the profit cap requirement entirely when determining constructed value profit.  Where the record

lacks data on profit normally realized by other companies on sales of the same general category

of products, Commerce still must attempt to comply with the profit cap requirement through the

use of facts otherwise available."); see also Husteel v. United States, 98 F.Supp.3d 1315, 1348

(Ct. Int'l Trade 2015) (following the Atar and Geum Poong decisions on this point).

As explained above, the whole purpose of the profit cap is to ensure that the profit rate

does not yield "irrational or unrepresentative results."  The statute provides no exception that

permits Commerce to ignore the calculation of a profit cap, even when Commerce believes there

is no suitable home market profit data.  See, e.g., Geum Poong Corp., supra, 25 CIT at 1097, 163

F.Supp.2d at 679.  It is unreasonable to conclude that a selected source does not yield "irrational

or unrepresentative results" by reference to that exact source as a surrogate profit cap.

Corroborating a source with the same source is tantamount to no corroboration at all, as the

14

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

Court has held when it emphasized that "a non-cap is not a cap."  Husteel, supra, 180 F.Supp.3d

at 1347-48 ("The court is not persuaded that Commerce has in fact capped the CV Profit rate. . . .

The Federal Circuit {in Atar} did not say that whenever Commerce resorts to alternative (iii) it

may dispense with any attempt to consider whether the profit rate was at all possible in the home

market and to thereby dispense with a profit cap.  The court does not accept Commerce's

tautology that selecting as a 'cap' the same rate without the 'cap' is a reasonable interpretation of

the statute and SAA's profit cap requirement; rather a non-cap is not a cap.")

       Commerce is statutorily required to calculate and apply an appropriate home market

profit rate cap in this case to ensure that the CV profit rate used was representative of Hyundai

Steel's expected home market experience and to avoid "irrational or unrepresentative results."

Yet, Commerce applied the CV profit and selling expense ratio of 16.3285%, based on SeAH

Steel's third-country sales to Kuwait, even though that source was widely inconsistent with a

broad market average of other record sources.  Specifically, using record data, Commerce could

have calculated a reasonable facts available profit cap of **3.97%** (i.e., the sum of a profit ratio of

0.98% plus a selling expense ratio of 3.00%) based on the contemporaneous[7] financial data of

some or all of the following four surrogate producers of OCTG and/or other merchandise that is

within the same general category of products as the subject merchandise:  PAO TMK; Borusan

Mannesmann Boru Sanayi ve Ticaret; Chung Hung Steel Corporation; and Nippon Steel

---

[7] Commerce states that these surrogate producers' financial data were "less contemporaneous with the POR."  Final Remand Results at 30; see also id. at 25, 32.  It is unclear what Commerce means by "less contemporaneous" as each of these sources overlaps the POR at least in part.  A source either is contemporaneous with the POR or it is not, and these sources were.  But to the extent Commerce believes that any data outside the 12-month POR are "less contemporaneous," then Commerce has failed to reconcile this position with the record evidence concerning the contemporaneity of SeAH Steel's third-country sales data.  See Hyundai Steel's Case Brief (Nov. 9, 2021), at 22-24, C.R.313, P.R.281; see also Hyundai Steel's Rule 56.2 Memorandum (Sept. 19, 2022) at 15-17, ECF No. 55.

Plaintiff's Partial Opposition Comments
Consol. Court No. 22-00138

Corporation.  See Hyundai Steel's Case Brief (Nov. 9, 2021), at 19, C.R.313, P.R.281.

Commerce had determined previously that at least three of these companies either manufacture

OCTG and/or are reasonable proxies for calculating CV profit for other OCTG producers.

    Commerce also could have included SeAH Steel's financial experience for its overall

operations in the profit cap calculation, which would have resulted in a profit cap for the five

companies of **4.94%** (i.e., the sum of a profit ratio of 1.64% plus a selling expense ratio of

3.30%).  Id.  This approach also would have resulted in a representative and reliable facts

available profit cap.  In fact, there were several reasonable approaches that Commerce could

adopt to calculate a reasonable and representative CV profit and selling expense ratio to apply to

Hyundai Steel.

    But by failing to consider the abundance of evidence on the administrative record and

applying an unreasonably high profit estimate, the fundamental statutory purpose of achieving a

fair comparison between normal value and export price is undermined.  As cited above, repeated

court decisions require Commerce to calculate and apply a profit rate cap in such circumstances

based on facts available, and that the "absence of information" excuse is insufficient where the

underlying administrative record contained numerous usable other sources—i.e., available

facts—upon which Commerce could have calculated a profit cap, including several that are cited

on pages 4 to 5 of the Final Remand Results.

    Furthermore, Commerce's limiting conclusion that "SeAH's profit data from the sale of

OCTG in its third-country market are the best data to be used as the 'facts available' profit cap in

calculations for Hyundai Steel, because they are specific to OCTG," Final Remand Results at 19

(emphasis added), is not consistent with the statute because the statute because the statute

contains no such limitation.  Quite to the contrary, the statute expressly requires Commerce not

**Plaintiff's Partial Opposition Comments**
**Consol. Court No. 22-00138**

to adopt such a restrictive analysis as described <u>supra</u>.  That is, similar to Alternative 1—which

focuses on the specific exporter being examined—Alternative 3 of 19 U.S.C. § 1677b(e)(2)(B)

requires Commerce to consider the profit realized on sales of merchandise that is in the "same

general category of products as the subject merchandise."  But Commerce here adopted an

OCTG-specificity requirement of the "foreign like product" language of Alternative 2 of 19

U.S.C. § 1677b(e)(2)(B) and substituted it for the "same general category of products" of

Alternative 3.  As such, Commerce's reasoning is not consistent with the actual statutory

language governing the calculation of CV profit under Alternative 3.

     Finally, the Court has recognized that because the goal in calculating CV profit is to

approximate the <u>home market profit experience</u> of the respondents, the use of an appropriate

profit cap is especially important where the profit rate taken from a respondent's third-country

sales is not based on any sales in the home market.  <u>See</u>, <u>e.g.</u>,  <u>Husteel</u>, 98 F.Supp.3d. at 1349.

As in the instant case, such a profit rate "therefore appears to be a relatively poor surrogate for

the home market experience."  <u>Id.</u>  In <u>Husteel</u>, the Court also cited record evidence indicating

that the profit rate of the selected third-country producer was abnormally high and driven by

marked differences between the third-country producer and the home market respondents in the

products and services they offered.  <u>Id.</u>  Accordingly, "dispensing with the profit cap requirement

entirely in this case could run the risk that the CV profit rate will be unrepresentative of the

respondents' expected home market experience."  <u>Id.</u>

     Substantial record evidence here points to precisely the same conclusion.  SeAH Steel,

the OCTG producer whose third-country sales Commerce selected to determine CV profit, does

not sell OCTG in Korea, i.e., the home market.  SeAH Steel's abnormally high third-country

profit rate (16.3285%) thus reflects, in large part, the value of sales of dissimilar products in a

**Plaintiff's Partial Opposition Comments**
**Consol. Court No. 22-00138**

part of the world other than Korea.  This plainly is a "relatively poor surrogate for the home

market experience," id. at 1394, as is evidenced by the fact that the Kuwait profits differ vastly

from the experience of other global producers of merchandise that falls within the same general

category of products as OCTG and whose profit ratio was only 0.98% and selling expense ratio

was only 3.00% (or 3.97% combined).  Indeed, SeAH Steel's Kuwait experience was vastly

different from SeAH Steel's own experience for its sales of steel pipe products to all markets,

with a profit and selling expense margin that is nearly twice as high as that derived from the

company's audited financial statements (i.e., 16.3285% for Kuwait vs. 8.81% for SeAH Steel's

overall operations).

      For these reasons, Hyundai Steel respectfully requests that this Court remand

Commerce's determination for reconsideration with instructions to calculate CV profit and

selling expenses in a manner that yields rational results and is representative of Hyundai Steel's

expected home market experience, consistent with the statutorily mandated CV profit cap.

## IV.    <u>CONCLUSION</u>

      For the foregoing reasons, Hyundai Steel respectfully requests that the Court find that

Commerce's <u>Final Remand Results</u> are unsupported by substantial evidence and otherwise not in

accordance with law with respect to the CV profit and selling expense issue, and remand this

case again to Commerce with instructions to recalculate Hyundai Steel's weighted-average

dumping margin in a manner consistent with the arguments set forth above and in Plaintiff's

September 19, 2022, Rule 56.2 Memorandum.

**Plaintiff's Partial Opposition Comments**
**Consol. Court No. 22-00138**

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Robert G. Gosselink
Jarrod M. Goldfeder

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
Tel.:  (202) 223-3760

Dated:  September 12, 2023        *Counsel to Hyundai Steel Company,*
                                 *Plaintiff*

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **HYUNDAI STEEL COMPANY,** |
| **Plaintiff,** |
| **AJU BESTEEL CO., LTD., NEXTEEL CO., LTD., and HUSTEEL CO., LTD.,** |
| **Consolidated Plaintiffs,** |
| **and** |
| **HUSTEEL CO., LTD., NEXTEEL CO., LTD., and SEAH STEEL CORPORATION,** |
| **Plaintiff-Intervenors,** |
| **v.** |
| **UNITED STATES,** |
| **Defendant,** |
| **and** |
| **VALLOUREC STAR, L.P., WELDED TUBE USA INC., and UNITED STATES STEEL CORPORATION,** |
| **Defendant-Intervenors.** |

Before:  Hon. Jennifer Choe-Groves, Judge

Consol. Court No. 22-00138

<u>**CERTIFICATE OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)**</u>

The undersigned counsel at Trade Pacific PLLC hereby certifies that the accompanying Comments of Plaintiff, Hyundai Steel Company, in Partial Opposition to Commerce's Remand Redetermination, dated September 12, 2023, complies with the maximum 10,000 word-count limitation described in part 2(B)(1) of the Court's Chambers Procedures.  These Comments

Consol. Court No. 22-00138
**Certification of Compliance**

contain 5,989 words according to the word-count function of the word-processing software used

to prepare the memorandum, excluding the table of contents, table of authorities, and counsel's

signature block.

                                 Respectfully submitted,

                                 /s/ Jarrod M. Goldfeder
                                 Robert G. Gosselink
                                 Jarrod M. Goldfeder
                                 TRADE PACIFIC PLLC
                                 700 Pennsylvania Avenue, SE, Suite 500
                                 Washington, D.C.  20003
                                 Tel.:  (202) 223-3760

Dated:  September 12, 2023        *Counsel to Hyundai Steel Company,*
                                 *Plaintiff*