**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

_____
)
HYUNDAI STEEL COMPANY, )
)
        Plaintiff, )
    v. )
)
AJU BESTEEL CO., LTD., NEXTEEL CO., LTD., )
and HUSTEEL CO., LTD., )
)
        Consolidated Plaintiffs, )
)
    and )
)
HUSTEEL CO., LTD., NEXTEEL CO., LTD., and )
SEAH STEEL CORPORATION, )
)
        Plaintiff-Intervenors, )
)
    v. )    Consol. Court No. 22-00138
)
UNITED STATES, )
)
        Defendant, )
and )
)
VALLOUREC STAR, L.P., )
WELDED TUBE USA INC., and )
UNITED STATES STEEL CORPORATION, )
)
        Defendant-Intervenors. )
_____)

# <u>ORDER</u>

Upon consideration of the Department of Commerce's final results of redetermination

pursuant to remand, comments in opposition, and defendant's response thereto, and all other

pertinent papers, it is hereby

ORDERED that the remand results are sustained in their entirety.

Dated: _____, 2023     _____

    New York, NY                                   JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| HYUNDAI STEEL COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| AJU BESTEEL CO., LTD., NEXTEEL CO., LTD., ) | |
| and HUSTEEL CO., LTD., ) | |
| ) | |
| Consolidated Plaintiffs, ) | |
| ) | |
| and ) | |
| ) | |
| HUSTEEL CO., LTD., NEXTEEL CO., LTD., and ) | |
| SEAH STEEL CORPORATION, ) | |
| ) | |
| Plaintiff-Intervenors, ) | |
| ) | |
| v. ) | Consol. Court No. 22-00138 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| and ) | |
| ) | |
| VALLOUREC STAR, L.P., ) | |
| WELDED TUBE USA INC., and ) | |
| UNITED STATES STEEL CORPORATION, ) | |
| ) | |
| Defendant-Intervenors. ) | |

## DEFENDANT'S RESPONSE IN SUPPORT OF REMAND RESULTS

Defendant, the United States, respectfully submits this response to the comments

submitted by Hyundai Steel Company (Hyundai Steel), NEXTEEL Co., Ltd. (NEXTEEL) and

AJU Besteel Co., Ltd. (AJU Besteel), challenging the Department of Commerce's final results of

redetermination of the 2019-2020 administrative review of the antidumping duty order on certain

oil country tubular goods (OCTG) from the Republic of Korea ordered pursuant to *Hyundai Steel Company et al. v. United States*, Consol. Ct. No. 22-00138, Slip Op. 23-87, 639 F. Supp. 3d 1325 (Ct. Int'l Trade June 9, 2023) (*Remand Order*).[1]  Final Results of Redetermination Pursuant to Court Remand (August 15, 2023), ECF No. 78 (Final Remand Results).  As discussed below, Commerce's Final Remand Results fully comply with the Court's *Remand Order* and are supported by substantial evidence and in accordance with law.  Accordingly, the Court should sustain the Final Remand Results.

## BACKGROUND

The administrative determination under review is *Certain Oil Country Tubular Goods From the Republic of Korea*, 87 Fed. Reg. 20,815 (Dep't of Commerce April 8, 2022) (final results of 2019-2020 admin. review), P.R. 317, and accompanying Issues and Decision Memorandum (IDM), P.R. 305 (*Final Results*), covering the period of review from September 1, 2019 through August 31, 2020.  On May 6, 2022, plaintiffs and consolidated plaintiffs challenged the *Final Results*.  On December 8, 2022, the United States requested that the Court remand the issue of constructed export price (CEP) profit to allow Commerce to reexamine the administrative record.  *See* Defendant's Response In Opposition To Motions For Judgment Upon The Administrative Record (Dec. 8, 2022), ECF No. 60.  On June 9, 2023, the Court issued the *Remand Order*, which allowed Commerce to reconsider three issues:  (1) the calculation of Hyundai Steel's CEP profit (for which Commerce requested a voluntary remand); (2) the calculation of Hyundai Steel's constructed value (CV) profit and selling expenses; and (3) the calculation of Hyundai Steel's CV profit cap.  *See* Remand Order at 16.

---

[1] Because NEXTEEL and AJU Besteel concur with and incorporate by reference Hyundai Steel's comments, we only discuss Hyundai Steel's comments in this response.

On July 31, 2023, Commerce released the Draft Results of Redetermination to interested parties. *See* Draft Results of Redetermination Pursuant to Court Remand, *Hyundai Steel Co. et al. v. United States,* Court No. 22-00138, Slip Op. 23-87 (Ct. Int'l Trade June 9, 2023), dated July 31, 2023 (Draft Results of Redetermination). Therein, Commerce reconsidered and changed the methodology by which it calculates CEP profit for Hyundai Steel, and continued to rely on the previous methodology to calculate the CV profit and selling expenses and the CV profit cap. *See generally*, Draft Results of Redetermination. Commerce timely received comments from AJU Besteel, Hyundai Steel, and NEXTEEL on August 7, 2023; *see also* AJU Besteel's Letter, "Comments on Draft Remand Results," dated August 7, 2023; Hyundai Steel's Letter, "Comments on Draft Remand Results," dated August 7, 2023; NEXTEEL's Letter, "NEXTEEL's Comments on Draft Remand Redetermination," dated August 7, 2023. After considering the parties' comments, Commerce made no changes to the Draft Results of Redetermination, and filed its Final Remand Results with the Court on August 15, 2023.

**ARGUMENT**

As set forth below, Commerce's Final Remand Results fully comply with the Court's order, are supported by substantial evidence and are in accordance with law.

**I.      Commerce's Calculation Of Hyundai Steel's CEP Profit Is Lawful And Supported By Substantial Evidence**

The Court granted a voluntary remand for Commerce to reevaluate the administrative record and reconsider its CEP profit calculations. On remand, Commerce revised its calculations to align with the statute and the methodology used in the 2014-15, 2015-16, and 2016-17 review periods. Final Remand Results at 7-10. No party has challenged the Final Remand Results on this issue. Nonetheless, we explain below how Commerce's determination complies with the *Remand Order*, is supported by substantial evidence, and accords with law.

Pursuant to 19 U.S.C. § 1677a(f)(1), "… profit shall be an amount determined by multiplying the total actual profit by the applicable percentage." Sections 1677a(f)(2)(C) and (D) further provide the definitions of total expenses and total actual profit, and indicate a preference for calculating the CEP profit ratio based on the expenses and profits of the "foreign producer, exporter, and affiliated parties." Additionally, "{s}ection 1677a(f)(2)(C) establishes a tripartite hierarchy of methods for calculating 'total expenses.'" *NTN Bearing Corp. of Am. v. United States*, 248 F. Supp. 2d 1256, 1270 (Ct. Int'l Trade 2003). Section 1677a(f)(2)(C)(i) "provides for the use of expenses 'requested by {Commerce} for the purpose of establishing normal value and constructed export price.'" *SeAH Steel Corp. v. United States*, 539 F. Supp. 3d 1341, 1365 (Ct. Int'l Trade 2021). However, "{i}f this information is not available, then the total expenses incurred with respect to the 'narrowest category of merchandise sold in the United States and the exporting country which includes the subject merchandise' is used. *NTN Bearing Corp. v. United States*, 295 F.3d 1263, 1268 (Fed. Cir. 2002) (citing 19 U.S.C. § 1677a(f)(2)(C)(ii)). Finally, "{i}f the data necessary to determine 'total expenses' under either of these methods is not available, then 'total expenses' are the 'expenses incurred with respect to the narrowest category of merchandise sold in all countries which includes the subject merchandise.'" *NTN Bearing*, 248 F. Supp. 2d at 1270 (citing 19 U.S.C. § 1677a(f)(2)(C)(iii)).

Here, Commerce reconsidered the source for calculating the CEP profit ratio, and determined that Hyundai Steel's overall profit ratio for steel related activities represented actual profit from Hyundai Steel and was an appropriate CEP profit source pursuant to 19 U.S.C. § 1677a(f)(2)(C)(iii). *See* Final Remand Results at 7-10. In reaching this determination, Commerce considered six options: (1) Hyundai Steel's actual OCTG profit ratio; (2) Hyundai Steel's overall profit ratio for steel related activities; (3) Hyundai Steel USA's overall profit for

steel related activities; (4) Hyundai Steel's U.S. sales database; (5) average of various surrogate pipe producers; and (6) average of SeAH's overall profit for steel related activities. *Id.* at 7-8.

Commerce found that, of these options, only options 1-4 represented actual profit for Hyundai Steel (*i.e.*, the foreign producer or exporter). *Id.* Therefore, Commerce evaluated these options in accordance with the framework set out in 19 U.S.C. § 1677a(f)(2)(C)(i)-(iii). Commerce found that none of the available sources reflected profit earned on "subject merchandise sold in the United States and the foreign like product sold in the exporting country" (19 U.S.C § 1677a(f)(2)(C)(i)), or the "narrowest category of merchandise sold in the United States and the exporting country which includes the subject merchandise (19 U.S.C. § 1677a(f)(2)(C)(ii)). Accordingly, Commerce selected a CEP profit source in accordance with 19 U.S.C. § 1677a(f)(2)(C)(iii). Final Remand Results at 9-10. In particular, Commerce determined that Hyundai Steel's overall profit ratio for steel related activities, was the best CEP profit source on the record and represented actual profit from Hyundai Steel. Final Remand Results at 10. Commerce selected this source for Hyundai Steel's CEP profit calculation and recalculated Hyundai Steel's dumping margin accordingly. Final Remand Results at 10.

No party challenges Commerce's revised CEP calculations. *See* Final Remand Results at 20-21; *see also* Comments of Consolidated Plaintiff and Plaintiff-Intervenor NEXTEEL Co., Ltd. In Partial Opposition of Remand Results, (September 12, 2023), ECF No. 80; Comments of Plaintiff, Hyundai Steel Company, in Partial Opposition to Commerce's Remand Redetermination at n.2, ECF No. 81; Comments of Consolidated Plaintiff, AJU Besteel Co., Ltd., in Partial Opposition to Commerce's Remand Redetermination, ECF No. 82. Additionally, as set forth above, Commerce has complied with the Court's *Remand Order* and its determination with respect to CEP profit is supported by substantial evidence and in accordance

with law.  For these reasons, we respectfully request that the Court sustain Commerce's Final Remand Results on this issue.

## II.     Commerce's Calculation Of Hyundai Steel's CV Profit And Selling Expenses Is Reasonable And Supported By Substantial Evidence And In Accordance With Law

Commerce properly calculated Hyundai Steel's CV profit and selling expenses using SeAH's combined profit and selling expenses for third-country market sales pursuant to 19 U.S.C. § 1677b(e)(2)(B)(iii).  Hyundai Steel argues that:  (1) Commerce misreads the statute concerning CV profit and selling expenses; (2) Commerce's reliance on the SeAH Steel's third country sales data to calculate CV profit and selling expenses for Hyundai Steel is unreasonable; and (3) Commerce placed inappropriate weight on the Federal Circuit's affirmance of a substantially identical approach in *NEXTEEL* to support its determination.  *See* Hyundai Steel Remand Comments at 2-13; *NEXTEEL Co., Ltd. v. United States*, 28 F.4th 1226, 1240-41 (Fed. Cir. 2022).  As discussed below, Commerce's CV profit and selling expenses calculation is supported by substantial evidence and in accordance with law.

"When Commerce is required to calculate constructed value for a respondent, Commerce must utilize the respondent's actual selling, general, and administrative expenses and profits from the home market or a third-country market."  *SeAH Steel Corp. v. United States*, 513 F. Supp. 3d 1367, 1378 (Ct. Int'l Trade 2021) (citing 19 U.S.C. § 1677b(e)(2)(A)).  However, if those data are unavailable then the statute provides three alternatives.  *See* 19 U.S.C. § 1677b(e)(2)(B).  "The first alternative method focuses on the data associated with the respondent company's other products 'in the same general category of products as the subject merchandise.'"  *Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 542 (Fed. Cir. 2019) (citing 19 U.S.C. § 1677b(e)(2)(B)(i)).  "The second focuses on the data of other respondents to the investigation."  *See id.* (citing 19 U.S.C. § 1677b(e)(2)(B)(ii)).  "The third

allows Commerce to use 'any other reasonable method,'" subject to a profit cap. *See id.* (citing 19 U.S.C. § 1677b(e)(2)(B)(iii)). In selecting CV profit, "{t}he objective is to find a good proxy (or surrogate) for the profits that the respondent can fairly be expected to build into a fair sales price of the particular merchandise." *SeAH Steel Corp.*, 513 F. Supp. 3d at 1396 (citing *Mid Continent*, 941 F.3d at 542).

Here, Hyundai Steel had no viable home market or third-country market, and the record lacked evidence of actual amounts incurred or realized by Hyundai Steel for profits in connection with production and sale of a foreign like product, in the ordinary course of trade, in Korea. Final Remand Results at 11; IDM at 37. As a result, Commerce was unable to calculate CV profit and selling expenses pursuant to 19 U.S.C. § 1677b(e)(2)(A) (*i.e.*, the preferred method), which resulted in Commerce's consideration of the alternatives provided in 19 U.S.C. § 1677b(e)(2)(B). Final Remand Results at 11. Although the statute does not provide a hierarchy for selecting among the alternatives, the SAA provides "the selection of an alternative will be made on a case-by-case basis, and will depend, to an extent, on available data." *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994) (SAA), at 840.

Commerce weighed the value of the available data and the record and reasonably determined that it was appropriate to calculate CV profit and selling expenses in accordance with 19 U.S.C. § 1677b(e)(2)(B)(iii) (*i.e.*, using any other reasonable method). Final Remand Results at 12-13. Commerce determined that the combined CV profit and selling expenses for SeAH's third-country market sales of OCTG during the period of review was the best information on the record. *See* Final Remand Results at 14. Commerce found that "SeAH's combined selling expense and profit experience reflects the profit of a Korean OCTG producer, on comparison

market sales of the merchandise under consideration, in the ordinary course of trade." *Id.*
Therefore, Commerce found that SeAH's profit was both specific to OCTG and production
within Korea. *Id.* In contrast, the alternative profit information on the record (specifically, the
financial statements for Borusan, Chung Hung, Nippon Steel, TMK, Tenaris, and Welspun) were
less specific to OCTG (or even products in the same general category as OCTG), did not reflect
the production experience of an OCTG producer in Korea, and in some instances were not
contemporaneous with the period of review. *Id.* Thus, Commerce reasonably relied on SeAH's
third-country market sales of OCTG during the period of review because it found that this source
most closely approximated the statutory preference for profits "in connection with the production
and sale of a foreign like product, in the ordinary course of trade, for consumption in the foreign
country." *See id.*; *see also* 19 U.S.C. § 1677b(e)(2)(A).

First, Hyundai Steel contends that Commerce misreads the statute concerning CV profit
and selling expenses "{b}ecause 19 U.S.C. § 1677b(e)(2)(B) contains no language setting forth a
preference that the profit and selling expenses must reflect the foreign like product over other
merchandise within the same general category of merchandise as subject merchandise."
Hyundai Steel Remand Comments at 6. Accordingly, Hyundai Steel reasons that "Commerce
unreasonably assigned a legal preference for SeAH Steel's third country sales of foreign like
product as the basis for CV profit instead of the alternate financial data of products within the
same general category as OCTG." *Id.* However, Hyundai Steel's argument is flawed, and
continues to misinterpret the statute.

Initially, 19 U.S.C. §§ 1677b(e)(2)(A) and (B) expressly reference "foreign like product"
and both 19 U.S.C. §§ 1677b(e)(2)(B)(i) and 19 U.S.C. § 1677b(e)(2)(B)(iii) reference profit in
connection with "merchandise that is in the same general category of products as the subject

merchandise." *See* Final Remand Results at 24. Further, 19 U.S.C. § 1677(16) defines the term "foreign like product" to include "*{t}he subject merchandise* and other merchandise, which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise." *See id.* (citing 19 U.S.C. § 1677(16) (emphasis added)). Although the statute "recognizes that Commerce has imperfect information on the record in situations where {Commerce} must resort to alternative methods, affording some flexibility to the agency . . . , this does not mean that there is no preference in the statute." *Id.* To the contrary, "…the statute has a preference for profit sources in the CV profit calculation reasonably approximating the profit connected to the production and sale of the merchandise under consideration (as opposed to dissimilar products) in a foreign country because it increases the accuracy of that calculation." *Id.* Commerce's interpretation of the statute is reasonable, and this Court has previously acknowledged that the "statute indicates a preference in calculating CV Profit for data sources reflecting production and sales in the foreign country of the foreign like product." *See Husteel Co. v. United States*, 180 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2016) (*Husteel II*). Additionally, this Court has sustained a similar methodological approach in other recent cases. *See* Final Remand Results at 16 (citing *SeAH Steel Corporation et al. v. United States*, 513 F. Supp. 3d 1367 (Ct. Int'l Trade 2021); *Bldg. Sys. de Mexico v. United States*, 609 F. Supp. 3d 1369, 1374-76 (Ct. Int'l Trade 2022)).

Moreover, in applying "any other reasonable method" pursuant to 19 U.S.C. § 1677b(e)(2)(B)(iii), Commerce appropriately considered the degree to which each profit source reflected production and sales in the foreign country and the merchandise under consideration. As explained above, Commerce considered the financial statements on the record for Borusan, Chung Hung, Nippon Steel, TMK, Tenaris, and Welspun. However, each was less specific to

the product under consideration *(i.e.*, OCTG) and none represented the production experience or profit from production in Korea. *See* Final Remand Results 25-26; IDM at 39-40. Repeatedly, Commerce found that SeAH's third country sales of OCTG were the best choice among various profit sources on the record. IDM at 37-41; Draft Remand Results at 10-16; Final Remand Results at 22-32. SeAH's profit reflects Korean production of OCTG, which can be reasonably used as a CV profit source for determining the profitability of OCTG sales of Hyundai Steel, another Korean producer. Thus, Commerce found that SeAH's third country OCTG sales reflects production of OCTG in Korea, and SeAH's data provide the greatest specificity to the merchandise under consideration. Final Remand Results at 26. Commerce also emphasized that OCTG are specialized and high value products, and the alternative profit sources include, at least in part, profit from non-comparable products that are not in the same general category of products as subject merchandise. *Id.*; *see also Husteel II*, 180 F. Supp. 3d at 1341-42 ("Commerce's interpretation of same general category of products in this case as excluding non-OCTG products is reasonable.… Commerce explained that it was reasonable to expect differences in the industry to reflect differences in the product based on the various applications and uses of the products in each respective industry. Because of the significant differences in the industries, Commerce's conclusion that non-OCTG pipe is not in the same general category of products as OCTG was not unreasonable or unsupported."). Thus, profit from these alternative sources would be derived from a mixture of various products that includes products that are *outside* the general category of merchandise with subject OCTG, whereas SeAH's third-country sales profit does not include such products and provides the greatest specificity with regard to the product under consideration. *Id.* at 27. Therefore, Commerce reasonably determined that SeAH's third-country profit and selling expenses is the best information available.

Next, Hyundai Steel claims Commerce's decision to rely on SeAH's third-country sales data is unreasonable and unrepresentative for calculating CV profit and selling expenses for Hyundai Steel. *See* Hyundai Steel Remand Comments at 6-11. Specifically, Hyundai Steel argues Commerce did not address certain arguments regarding the model mix of OCTG sold by SeAH and Hyundai Steel, or any deficiencies with the SeAH dataset. *Id.* However, Commerce examined all potential sources of CV profit and selected the source that best reflects the statutory preferences. Here, SeAH's dataset is the most specific and relates to production in Korea compared to the alternative financial statements, which relate to non-Korean producers, profit from products that are outside of the same general category of products, and are less contemporaneous with the period of review. Final Remand Results at 30, 31. Further, the alternative sources do not represent the production experience in Korea. *Id.* Commerce also explained that it was not necessary to "dissect" differences among various models of OCTG when the alternative sources on the record incorporated profit from dissimilar products, such as "water pipe, line pipe, automotive pipe, structural pipe, various coils, *etc.*" *Id.* at 31 and n.112 (*citing* SeAH CV Submission at Attachment 2-C and Hyundai Steel's Letter, "Oil Country Tubular Goods from the Republic of Korea: Submission of Factual Information and Comments Concerning CV Profit and Selling Expenses," dated April 14, 2021 (Hyundai Steel CV Submission) (P.R. 145-150) at Exhibit 1). Moreover, the "alternative sources of profit are company-wide financial statements that incorporate the profit at the aggregate level," and therefore it is "impossible to determine the exact model mix for the OCTG these companies sell or conclude that their model mix is a better fit with Hyundai Steel's model mix." *Id.*; *see* SeAH CV Submission at Attachments 1-A through 5-A; Hyundai Steel CV Submission at Exhibits 1-4; and , and Petitioner's Letter, "Oil Country Tubular Goods from the Republic of Korea:

Response to Request for Constructed Value Profit and Selling Expense Comments and Information," dated April 14, 2021 (C.R. 147-150) (P.R. 153-157) (Petitioner's CV Submission) at Exhibits 6 and 8. Both SeAH's third-country sales and Hyundai's U.S. sales relate exclusively to welded pipe, whereas the product catalogues of the alternative sources indicate the sale of seamless pipe. Final Remand Results at 32; *see* SeAH CV Submission at Attachments 1-C (Tenaris) and 2-C (TMK); *see also* Hyundai CV Submission at Exhibits 3 ("Product Information" at 20-21, "Seamless Pipe and Tubes") and 4; Petitioner's CV Submission at Exhibit 1 (pages 10-11). Thus, Hyundai Steel's assertion that Commerce improperly relied on SeAH third-country sales data lacks merit.

Finally, Hyundai Steel argues "{t}he Court must reject Commerce's reliance on other cases involving CV profit determinations because they have no bearing on the factual record applicable to the current appeal involving SeAH Steel's demonstrably unrepresentative sales to Kuwait." *See* Hyundai Steel Remand Comments at 11-13. Relying on *Mexichem* and *Nucor*, Hyundai Steel argues that facts do not automatically transfer to another investigation, and any prior administrative determination therefore is not legally binding on other reviews. *Id*. at 12-13 (citing *Mexichem Fluor Inc. v. United States*, 179 F.Supp.3d 1238 (Ct. Int'l Trade 2016); *Nucor Corp. v. United States*, 414 F.3d 1331, 1340 (Fed. Cir. 2005)). However, Hyundai Steel's argument falls flat.

We do not disagree that Commerce must make a determination based on the record before it, and that prior administrative determinations are not legally binding in future proceedings. However, as detailed above, that is precisely what Commerce did when it weighed the available record evidence and evaluated that evidence against the applicable legal framework. That Commerce cited cases where this Court and the Federal Circuit sustained

Commerce's analysis of similar factual and legal issues does not mean – as Hyundai Steel suggests – that Commerce blindly relied on those cases without further analysis.

Thus, Hyundai Steel's citations to *Mexichem* and *Nucor* are misplaced. Indeed, the Court in *Mexichem* upheld the Government's decision to apply the appropriate methodology so long as it is reasonable. *Mexichem*, 179 F. Supp. 3d at 1247 ("Plaintiffs' preference for their own underselling methodology is understandable, but the focal point . . . is not what methodology Plaintiffs would prefer, but on whether the methodology actually used by the Commission was reasonable." ) (internal quotations and brackets omitted)). Here, Commerce has reasonably explained the shortcomings of the alternative of profit data, and provided extensive reasoning regarding the benefits of relying on SeAH's third country sales of OCTG. Thus, while Hyundai Steel would prefer its own methodology, Commerce has presented substantial evidence and explained why reliance on the SeAH data is reasonable under 19 U.S.C. § 1677b(e)(2)(B)(iii). Thus, the Court should reject Hyundai Steel's argument to the contrary.

## III. Commerce's Calculation Of Hyundai Steel's CV Profit Cap Is Reasonable And Supported By Substantial Evidence And In Accordance With Law

Commerce's calculation of Hyundai Steel's CV profit cap is supported by substantial evidence and in accordance with law. Hyundai Steel argues that Commerce's CV profit cap is not reasonable. Hyundai Steel Remand Comments at 13-18. Specifically, Hyundai Steel contends that the use of facts available is impermissible and the use of SeAH Steel's third country sales is inconsistent compared to other record sources. *Id*. at 13-17. However, each of Hyundai Steel's arguments lacks merit.

When information under 19 U.S.C. § 1677b(e)(2)(A) is unavailable, Commerce may calculate profit pursuant to § 1677b(e)(2)(B) and use "any other reasonable method." 19 U.S.C. § 1677b(e)(2)(B)(iii). Further, the profit cap applied when using "any other reasonable method"

serves to prevent the various possible calculation methods from yielding anomalous results that stray beyond the "amount normally realized" from sales of merchandise in the same general category. *Atar S.r.l. v. United States*, 730 F.3d 1320, 1327 (Fed. Cir. 2013); *see also Mid Continent*, 941 F.3d at 545. Accordingly, Congress intended the CV profit cap to be: "(1) based on home market sales information of the same general category of products as the subject merchandise, (2) non-aberrational to the industry under consideration, (*i.e.*, 'the amount normally realized'), and (3) not based on the data of the respondent." *Mid Continent*, 941 F.3d at 545. However, "{w}hen Commerce determines that necessary information is missing from the administrative record, it must rely on facts otherwise available to fill in the gap in the record." *Remand Order* at 23 (citing 19 U.S.C. § 1677b(e)(a)). "Commerce may apply neutral facts available when information is absent from the administrative record, regardless of the reason for the absence." *Remand Order* at 23.

Here, Commerce was "unable to calculate the amount realized by exporters or producers in connection with the sale, for consumption in the foreign country, of the merchandise in the same general category of products as the subject merchandise," *i.e.*, the profit cap, in accordance with 19 U.S.C. § 1677b(e)(2)(B)(iii). Final Remand Results at 17. As a result, Commerce applied neutral facts available for the profit cap, because the record does not contain profit information for sales in Korea of OCTG or products in the same general category, and relied on SeAH's profit from sales in a third country market. *Id.* Commerce reasonably resorted to facts available because the record did not contain sufficient information to calculate a CV profit cap under 19 U.S.C. § 1677b(e)(2)(B)(iii). Final Remand Results at 5. Therefore, Commerce "{a}s facts available, {} used SeAH's profits from sales in a third-country market as the best source

available for calculation of the profit cap because they are specific to OCTG and reflect the production experience of a Korean OCTG producer." *Id.* at 5-6.

Similarly, in *NEXTEEL*, Commerce also could not calculate the profit cap pursuant to 19 U.S.C. § 1677b(e)(2)(B)(iii) because profit information for sales in Korea of OCTG and products in the same general category were not on the record. *See NEXTEEL*, 28 F.4th at 1240-41. In that case, Commerce also had to rely on facts available, and SeAH's sales were chosen because these sales were "specific to OCTG and represent the production experience of a Korean OCTG producer in Korea," and therefore were a reasonable choice for a CV profit cap. *Id.* Commerce's approach here is substantively identical to the approach the Federal Circuit sustained in *NEXTEEL*.

In addition, the Court has also previously sustained "Commerce's conclusion that non-OCTG pipe is not in the same general category of products as OCTG was not unreasonable or unsupported" in other cases. *See, e.g., Husteel II*, 180 F. Supp. 3d 1330, 1342. In the present case, Commerce determined that the SeAH third-country data met the CV profit requirements for use under the statutorily-preferred method and were not distorted by the production and sale of products not considered to be in the same general category of products as OCTG. Final Remand Results at 19. Thus, Commerce appropriately determined that SeAH's profit data from the sale of OCTG in its third-country market was the best data to be used as the "facts available" CV profit cap in calculations for Hyundai Steel, because they are specific to OCTG and represent the production experience of a Korean OCTG producer in Korea. *Id.*

First, relying on *Geum Poong* and *Husteel I*, Hyundai Steel argues that Commerce may not apply facts available, and its use perpetuates irrational or unrepresentative results. *See* Hyundai Steel Remand Comments at 13-15 (citing *Geum Poong Corp. v. United States*, 163

F.Supp.2d 669, (Ct. Int'l Trade 2001) (*Geum Poong*); *Husteel Co. v. United States*, 98 F.Supp.3d 1315, 1348 (Ct. Int'l Trade 2015) (*Husteel I*)). However, Hyundai Steel's reliance is misplaced. The Court in *Geum Poong* stated, "Commerce is free to employ a reasonable approach" and "Commerce must explain why it chose one methodology over another." *Geum Poong*, 163 F.Supp.2d at 679. Accordingly, "Commerce cannot sidestep the requirement *without giving adequate explanation* even in a facts available scenario." *Id*. (emphasis added). The Court in *Husteel I* determined that even if Commerce's finding was reasonable, "Commerce was still required to attempt to apply the profit cap on the basis of facts available." *Husteel I*, 98 F.Supp.3d at 1349; *see* Final Remand Results at 39. Importantly, following a remand in which Commerce applied a facts available profit cap, the Court sustained Commerce's determination. *Husteel II*, 180 F. Supp. 3d at 1348. The Court found, "Commerce's failure to cap the profit rate, however, was reasonable based on the record. Commerce was faced with a difficult decision as all of the information on the record had imperfections, and the court is not persuaded that any of the 'caps' suggested by Respondents fulfill the statute any better than no cap." *Husteel II*, 180 F. Supp. 3d at 1348.

Moreover, this Court has determined that "{w}hen Commerce explains reasonably that information is not available for Commerce to calculate a profit cap, Commerce may calculate constructed profit under subsection (iii) without calculating a profit cap." *SeAH Steel Corp. v. United States*, 539 F. Supp. 3d 1341, 1362 (Ct. Int'l Trade 2021). "The court normally defers to Commerce's selection of the best available information when Commerce is forced to rely on facts available." *Id*. at 1347 (referencing *Allied-Signal Aerospace Co. v. United States, 996* F.2d 1185, 1191 (Fed. Cir. 1993)).

Here, Commerce provided a detailed explanation that the information on the record to calculate a CV profit cap under 19 U.S.C. § 1677b(e)(2)(B)(iii) is not available. *See* Final Remand Results at 17-19; *see* Draft Results of Redetermination at 16-18. Commerce calculated a CV profit cap based on facts available using SeAH's third-country sales as best available information. Final Remand Results at 39. Commerce also examined "the alternative profit sources on the record (and reexamined them for both the *Final Results* and this remand proceeding), concluding each time that SeAH's data was the best available information for using as the profit cap." *Id.* Further, Commerce reasonably explained that the selection of a facts available profit cap based on profit from third-country sales of OCTG is a reasonable proxy for profits normally realized by Korean exporters and producers from sales of merchandise in the same category of merchandise as the subject merchandise, which is in accordance with the Federal Circuit's holding in NEXTEEL. *NEXTEEL II*, 28 F.4th at 1241; Final Remand Results at 40. All of the alternative profit sources on the record include sales of products that are outside the same general category of merchandise. Final Remand Results at 40. Thus, the "SeAH data meet the CV profit requirements for use with regard to SeAH under the preferred method of the law and *are not distorted by the production and sale of products not considered to be in the same general category of products as OCTG*." *Id.* (emphasis in original). Therefore, Hyundai Steel is wrong that Commerce may not apply facts available to calculate the profit cap.

Finally, Hyundai Steel contends that Commerce should not have relied on SeAH's third country sales and "the goal in calculating CV profit is to approximate the home market profit experience of the respondents." *See* Hyundai Steel Remand Comments 15-18. However, Hyundai Steel's comparison of alternative profit sources to demonstrate SeAH's profit is abnormally high is flawed. In particular, the alternative sources include, in part, profit from non-

comparable products that are outside of the same general category of products as the subject merchandise. Final Remand Results at 37. Commerce also explained that comparing sales of "Korean-made OCTG to profit that is derived, in part, from sales of such dissimilar products as Russian power generation pipe, Japanese chemicals and steel sheet, Taiwanese coils, or Turkish automotive tube and water transmission pipe" is illogical. *Id*. at 37-38. Moreover, Commerce found "SeAH's profit of 16.3 percent from sales of OCTG in Kuwait is almost identical to the average CV profit of 16.2 percent (based on sales of two OCTG producers) that Commerce used on remand in the original investigation, which this Court sustained." *Id*. at 38 n. 145. Finally, Commerce found that SeAH's profit rate was a reasonable replacement for the missing requested information because "in addition to sales of OCTG to third-country markets, it includes both profit from OCTG dumped in the U.S. market as well as from sales of lower-end merchandise that is outside of the same general category of products as the subject merchandise." Final Remand Results at 38; *see also* SeAH's Letter, "Oil Country Tubular Goods from the Republic of Korea – Response to the Department's July 2 Supplemental Questionnaire," dated July 26, 2021, at Appendix SA-5-A (C.R. 202-214) (P.R. 216-218). Thus, the SeAH data is a reasonable dataset to use as facts available.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Final Remand Results.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

s/Claudia Burke
CLAUDIA BURKE
Deputy Director

OF COUNSEL:

JARED M. CYNAMON
Attorney
Office of the Chief Counsel
   for Trade Enforcement & Compliance
U.S. Department of Commerce

September 26, 2023

s/Hardeep K. Josan
HARDEEP K. JOSAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza, Suite 346
New York, New York 10278
Tel.: (212) 264-9245
Fax: (212) 264-1916
Email: hardeep.k.josan@usdoj.gov
Attorneys for Defendant

# CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 5,271 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

 s/ Hardeep K. Josan
Hardeep K. Josan
Trial Attorney
Department of Justice
Civil Division